Jerome A. WHITAKER, Plaintiff and Respondent,

v.

Bertha Haraldson WALTER, Defendant and Appellant.

No. 7784.

Supreme Court of North Dakota.

Dec. 23, 1958.

John O. Garaas, Watford City, for appellant.

Joseph P. Stevens, Minot, for respondent.

GRIMSON, Chief Justice.

The plaintiff and the defendant in this case entered into an agreement by letter whereby plaintiff bought from defendant seventeen oil and gas royalties which she owned in McKenzie County, North Dakota, for $10,000. That contract is not disputed.

When it came to transfer of these royalties defendant desired to retain three of them. It is admitted that upon some further negotiations on that subject the defendant assigned and delivered to plaintiff fourteen of such royalties and received the $10,000. The remaining three royalties were retained by the defendant. Plaintiff claims defendant agreed in these negotiations, which resulted in the delivery of the fourteen assignments to later assign one-half interest in two of those

royalties to plaintiff and brings suit to compel the defendant to assign to him such additional royalties, consisting of one-half of one percent royalty of the oil and gas that might be produced from the Southwest Quarter (SW¼) of Section 23, in Township 152, Range 96, and one-half of one percent royalty of the oil and gas that might be produced from the South Half (S½) of Section 7, in Township 152, Range 95. Defendant claims there was no agreement to that effect.

The District Court decided in favor of the plaintiff. Defendant appeals and asks for a trial de novo.

The evidence shows that the plaintiff is an oil broker, living in Minot, North Dakota. The defendant lives in St. Petersburg, Florida. She had inherited from her deceased husband seventeen oil royalties in McKenzie County. After ascertaining from two friends that the reasonable value thereof would be $10,000 she made an offer in writing on April 12, 1956, to the plaintiff to sell these royalties for $10,000. The plaintiff wrote an acceptance of that offer on April 27, 1956.

On May 10, 1956, defendant received the royalty assignments for execution. On checking them over she found some notations on some of the assignments which made her worry over her title thereto and apparently she concluded to withdraw the three assignments so involved. On May 22, 1956, the plaintiff and defendant had a telephone conversation about this desire of the defendant. After that telephone conversation plaintiff wired the defendant as follows:

"Confirming our telephone conversation of today in which you agreed to immediately send fourteen signed and notarized royalty deeds to the Union National Bank, Minot, No. Dak, covering your McKenzie County holdings, retaining three deeds until your arrival here and on which we are to arbitrate stop I agree not to hold you responsible in any way as to the titles

on said deeds and agree to release to your credit at the Union National Bank, $10,000.00 upon delivery of the 14 deeds to me by the bank and am so instructing them.

"Jerome A. Whitaker,
Clarence Parker Hotel."

This telegram contains an amendment of the original contract, to the effect that defendant would send the fourteen royalty assignments to the Union National Bank but withhold the three assignments until she came to Minot and that they then would arbitrate as to them. Plaintiff also agreed not to hold defendant responsible as to the titles of the royalties assigned.

Upon receiving this telegram, defendant, on May 23rd, mailed the fourteen royalty assignments to the Union National Bank of Minot with the instruction to deliver them to plaintiff upon payment of $10,000. Later that day defendant received a letter from the plaintiff, dated May 23rd, in which he said:

"This is to confirm our telephone agreement and my wire of yesterday concerning our understanding which was as follows:

"'You agreed to immediately forward 14 signed and notarized royalty assignments covering all of your McKenzie County royalty holdings to the Union National Bank, Minot, North Dakota, except:

1. NE¼, Sec. 27, T. 151 N. R. 96 W 1%

2. SW¼ Sec. 23, T. 152, N.R. 96 W 1%

3. S½ Sec. 7, T. 152, R. 95 W 1%.

"I asked that we compromise on these exceptions later upon your arrival in North Dakota, and at that time I would agree to your retaining the 1% in the NE¼ of Sec. 27, if you would assign me a ½% interest in the SW¼ of Sec. 23 and the S½ of Sec. 7.

"I have agreed that you shall not be held liable or responsible in any way as to the validity of title on any

of these parcels and that you may strike out the title warranty clause on the face of each instrument if you so desire. I further agreed that upon delivery of the 14 royalty assignments to me by the Union National Bank, I will release to your credit in the bank $10,000.00 in full payment for same."

"Mrs. Walter, I will appreciate it very much if you will complete this transaction as speedily as possible. We both have spent a great deal of time and have incurred unnecessary expense on it already and I am very deeply involved. I have complied with each and every further request you have made of me as you asked it and have acted in good faith at all times. I did not even set the price. It was yours and considerably higher than I originally thought I could pay. That is why the compromise on the three parcels is important to me, and I think only fair, as my deal from the beginning involved the entire spread and was based on your letter to Mr. Westlake.

"Hoping that we may conclude this matter happily and at once, I remain,
"Yours very truly,
Jerome A. Whitaker,"

This letter states that an amendment to the original agreement to the effect that the defendant sent the fourteen royalty assignments to the Union National Bank and retained the three royalties for future compromise, the terms of which he set forth, and further that title was waived and payment of $10,000 to be made on delivery of the fourteen royalty assignments, all of which was carried out.

As to the three royalties defendant was retaining, he had said in the telegram that they would "arbitrate" when defendant came to Minot. That, he explained in this letter further by saying he would "compromise" when she came to North Dakota, and that he would then agree to the defendant retaining one of the royalties if she would assign to him one-half of her interest in the other two royalties.

The evidence indicates the plaintiff had become involved in sales of some of those royalties and in order to get them transferred he was willing to compromise on the three royalties in question.

On May 26, 1956, the defendant wrote the plaintiff as follows:

"I am sending to the Union National Bank of Minot, fourteen signed and notarized royalty assignments. I have instructed Mr. Westlake to release these assignments to you upon your payment to him of $10,000.00.

"Your suggestion in your letter of May 23rd. is satisfactory as to the three leases which I am retaining. I am coming to Minot in June, and will get in touch with you and Mr. McCarthy to complete the transfer of these three leases.

"Very truly yours,
"Bertha W. Walter."
"(Mrs. Edward H. Walter.)"

In this letter she shows she carried out the final agreement as to the fourteen assignments. When she says that his "suggestion" is "satisfactory" she refers to the compromise proposed. If there is any doubt about that she confirms that by adding that when she comes to Minot in June she "will get in touch with you and Mr. McCarthy to complete the transfer of these three leases." Thereby she accepted that compromise. The original contract for the seventeen royalties was thus amended.

Defendant did go to Minot and had a talk with the plaintiff. She, however, did not execute the transfer of the royalties as she agreed to do. No further agreements were made. Plaintiff then brings this action to compel her performance of that last agreement.

■ Even if the negotiations preceding the letter and telegram were oral the plaintiff made an offer in writing of what

he would do as a compromise. The defendant accepted that offer in writing by her letter of May 26, 1956. The amendment of the original contract, therefore, was in writing and is binding upon the parties.

"Offer and acceptance may be made through the medium of letters, telegrams, or telephonic communications, and result in a complete contract as soon as an offer thus made is unconditionally accepted." 17 C.J.S. Contracts § 52 p. 400.

The judgment of the District Court is affirmed.

BURKE, MORRIS, and SATHRE, JJ., concur.